001-547-00

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DEREK FEUSTAL

        Plaintiff

v.                                                          No.: 18-01024 STA-egb

NICK WEEMS, BART ROSSON,
DALE HUFSTEDLER and PERRY
COUNTY, TENNESSEE

        *Defendants.*

---

DEFENDANTS NICK WEEMS, BART ROSSON, AND PERRY COUNTY'S
MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

---

Defendants Sheriff Nick Weems, Chief Deputy Bart Rosson, and Perry County, Tennessee by and through undersigned counsel, file this memorandum of law in support of their motion to dismiss.

BACKGROUND

Plaintiff, Derek Feustal, filed his complaint on or about February 2, 2018, attempting to bring claims against Defendants Sheriff Nick Weems, Chief Deputy Bart Rosson, Dale Hufstedler, and Perry County, Tennessee. Dale Hufstedler is a private citizen and not an employee of Perry County. (*See* Complaint, D.E. 1).

Plaintiff alleges that in 2015, he purchased certain real property in Perry County, Tennessee. (D.E. 1 ¶ 7). At the time the he purchased the property, there was a piece of equipment known as a "bobcat" located on the property. (D.E. 1 ¶ 8). Plaintiff admits that he learned that the bobcat belonged to Defendant Hufstedler, who had left the bobcat on the

property in 2011. After Plaintiff learned that Defendant Hufstedler owned the bobcat, his wife informed Mr. Hufstedler that he could come retrieve his bobcat. (D.E. 1, ¶ 9).

After a few months, Defendant Hufstedler failed to retrieve the bobcat, so Plaintiff decided to sell the bobcat to Peter Hanson.[1] (D.E. 1 ¶ 10). Subsequently, Sheriff Weems contacted Plaintiff's wife and informed her that if the bobcat was not returned to Defendant Hufstedler, Plaintiff would be arrested for theft. (D.E 1 ¶ 13). Plaintiff admits that after Sheriff allegedly spoke to his wife, he bought the bobcat back from Mr. Hanson. (D.E. 1 ¶ 15). However, after regaining possession of the bobcat, Plaintiff repeatedly refused to return the bobcat to its owner, Defendant Hufstefler. (D.E. 1 ¶ 16-18).

Plaintiff alleges that after he refused to return the bobcat to Mr. Hufstedler numerous times, Mr. Hufstedler went to a local magistrate and attested under oath facts which caused a warrant to be issued for Plaintiff's arrest. (D.E. 1 ¶ 19 & 24). Importantly, neither Sheriff Weems nor Chief Deputy Rosson attested to any facts before the magistrate judge to have the warrant issued. (D.E. 1 ¶ 19 & 24). Plaintiff alleges that Sheriff Weems merely "instructed" Defendant Hufstedler to go before the Magistrate Judge to obtain an arrest warrant. (D.E. 1 ¶ 19). After the warrant was issued, Plaintiff was arrested for theft of the bobcat on February 4, 2018. (D.E. 1 ¶ 19). Neither, Sheriff Weems nor Chief Deputy Rosson arrested Plaintiff. (Id.).

Plaintiff further alleges that after he was arrested, Chief Deputy Rosson along with other employees of the Perry County Sheriff's Department entered Plaintiff's property, seized the bobcat, and returned the bobcat to Defendant Hufstedler. (D.E. 1 ¶ 20-22). Plaintiff alleges "[u]pon information and belief," that Perry County, Tennessee, has "no policy and/or training of employees on issuance of arrest warrants and the seizure of property from citizens" and that this

---

[1] Mr. Hanson is not a party to this lawsuit.

2

"lack of policy and training resulted" in the violation of Plaintiff's constitutional rights.  (D.E. 1, ¶ 25).

## STANDARD

A court may grant a motion to dismiss for failure to state a claim upon which relief can be granted.  *See* FED. R. CIV. P. 12(b)(6). In reviewing a motion to dismiss, a court should not accept as true legal conclusions or unwarranted factual inferences. *See Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Erie County, Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*.  This standard demands that the factual allegations "raise a right to relief above the speculative level" and "nudge[] the[] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

"Where any person acting under color of state law abridges rights secured by the Constitution or United States laws . . . § 1983 provides civil redress." *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) (citing 42 U.S.C. § 1983). "To state a claim under 42 U.S.C. § 1983, Plaintiff must allege: (1) a deprivation of a right secured under the Constitution or federal law; and (2) that a person acting under color of state law subjected him to the deprivation or caused him to be subjected to the alleged deprivation." *Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003).  Here, Plaintiff has failed to allege sufficient facts to support a § 1983 claim against

3

any of these Defendants because he has not sufficiently alleged either that he suffered a constitutional deprivation or that any of these defendants actually caused any alleged deprivation.

I. **DEFENDANTS WEEMS AND ROSSON ARE ENTITLED TO QUALIFIED IMMUNITY.**

The reach of § 1983 is not without limit. Under the doctrine of qualified immunity, "government officials, including police officers, are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010). Qualified immunity is an immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985). Once qualified immunity is raised, the plaintiff bears the burden to prove that the defendant is not entitled to it. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). Qualified immunity is purely a question of law for the Court, and should be resolved as early in the case as possible. *Poe v. Haydon*, 853 F.2d 418, 424 (6th Cir. 1988). To decide whether a defendant is entitled to qualified immunity, the Court must engage in a two-step decisional process and consider: (1) whether the plaintiff has shown sufficient facts to make out a violation of a constitutional right; and (2) whether the constitutional right was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Here, the individual defendants are entitled to qualified immunity because Plaintiff has not sufficiently pled that the defendants violated any clearly established constitutional right.

*A. Under the Facts Alleged in the Complaint, There was Probable Cause to Arrest Plaintiff for Theft Pursuant to Tennessee Law.*

An arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment. *Ingram v. City of Columbus*, 185 F.3d 579, 592-93 (6th Cir. 1999);

*Donovan v. Thames*, 105 F.3d 291, 298 (6th Cir. 1997). The burden is on the plaintiff bringing a constitutional claim for false arrest under the Fourth Amendment to show probable cause for the arrest was lacking. *Provience v. City of Detroit*, 529 Fed. Appx. 661 (6th Cir. 2013). Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. *Adams v. Williams,* 407 U.S. 143, 149 (1972). "Probable cause" exists if the "facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003).

 Tennessee's criminal theft statute states:

**(a)** A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent.

TENN. CODE ANN. § 39-14-10. Here, Plaintiff admits that after Plaintiff purchased the real property, he learned that Defendant Hufstedler "left" the bobcat on the property. (D.E. 1, ¶ 9). After learning that the bobcat belonged to Defendant Hufstedler, Plaintiff's wife "told Mr. Hufstedler to come get the bobcat." (Id.). These facts alone establish probable cause to believe that Plaintiff committed theft under Tennessee law when the he decided a few months later to sell the bobcat after having previously acknowledged the bobcat belonged to Defendant Hufstedler. (D.E. 1 ¶ 10). Clearly, even under the facts as alleged in the complaint, Defendants would have possessed probable cause to arrest Plaintiff for theft even if it was later determined that the bobcat did not belong to Defendant Hufstedler. Accordingly, Plaintiff has failed to show his constitutional rights were violated and his claims must be dismissed.

5

*B. Plaintiff has Failed to Allege Sufficient Personal Involvement from these Defendant to Set Forth a Viable Fourth Amendment False Arrest Claim Against Them.*

Even if Plaintiff has alleged enough facts to assert that he was arrested without probable cause, he has failed to allege sufficient facts to show these Defendants can be held liable for his alleged unlawful arrest. It is well-settled that to state a cognizable Section 1983 claim, the plaintiff must show some personal involvement by each of the named defendants. *See Salehpour v. Univ. of Tenn.,* 159 F.3d 199, 206 (6th Cir. 1998), *cert. denied,* 526 U.S. 1115 (1999). Indeed, personal involvement by the defendant is an essential element in a § 1983 cause of action asserting a constitutional deprivation. *Copeland v. Machulis,* 57 F.3d 476, 481 (6th Cir. 1995). To constitute an arrest, there must be either the application of physical force, however slight, or, where that is absent, submission to an officer's "show of authority" to restrain the subject's liberty. *See California v. Hodari D.*, 499 U.S. 621, 626-28, 1 (1991); *Gardenhire v. Schubert*, 205 F.3d 303, 313 (6th Cir. 2000). Here, Plaintiff has not alleged that Sheriff Weems or Chief Deputy Rosson arrested Plaintiff. Because they did not arrest Plaintiff, they cannot be held liable for his arrest or any alleged violation of his Fourth Amendment rights.

*C. Defendants are Entitled to Qualified Immunity Because a Magistrate Judge Issued a Facially Valid Warrant Prior to Plaintiff's Arrest.*

It is well settled that officers are entitled to rely on a judicially-secured arrest warrant as satisfactory evidence of probable cause. *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989). In fact, a facially valid warrant normally serves as a complete defense to a false arrest claim. *See Baker v. McCollan*, 443 U.S. 137, 143-44 (1979); *Gunnels v. Kenny*, 700 Fed. Appx. 478, 481-482 (6th Cir. 2017) (citing, *Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005)). In the Sixth Circuit, "an officer ordinarily receives qualified immunity if he or she relies on a judicially secured warrant." *Hale*, 396 F.3d at 724. This follows from the Supreme Court's "preference for

6

warrants" and the great deference accorded to a magistrate judge's decision. *See United States v. Leon*, 468 U.S. 897, 914 (1984).

The only situation where an officer cannot rely on a warrant is when it was premised on *the officer's* knowing or reckless false statements, which were necessary to the judicial determination of probable cause. *See Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243 (6th Cir. 1989). Thus, a plaintiff may overcome an officer's qualified immunity in the Fourth Amendment context, despite that officer's reliance on a warrant, only if the plaintiff can show that (1) *the officer* made the false statements knowingly and intentionally or with a reckless disregard for the truth; and (2) without the false statements or omissions, the remainder of the affidavit on which the warrant is based is insufficient to establish probable cause. *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003).

In order to overcome an officer's entitlement to qualified immunity when an arrest warrant has been issued, a plaintiff must therefore establish: (1) a substantial showing that *the defendant* stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause. *Id*. Here, the Complaint alleges that *Defendant Hufstedler* obtained the arrest warrant and that it was *Defendant Hufstedler* who attested under oath that he owned the bobcat. (D.E. 1 ¶ 19 & 24). Defendant Hufstedler is not an employee or official of Perry County, Tennessee, and Plaintiff has not alleged that either Sheriff Weems or Chief Deputy Rosson swore out the warrant. Because a warrant was issued, the only way Sheriff Weems or Chief Rosson could be held liable is if they personally had the warrant issued and in doing so "stated a deliberate falsehood or showed reckless disregard for the truth." According to the allegations in the Complaint, neither

7

of these Defendants were involved in issuing the warrant and neither stated any "deliberate falsehood" in an effort to have the warrant issued.

Importantly, the second element of qualified immunity establishes that if a reasonable person in the defendant's position could have failed to appreciate that a clearly established constitutional right would be violated by his conduct, he is protected by immunity and the plaintiff's claims fail. *Anderson v. Creighton*, 483 U.S. 635, 640, (1987). The court must employ a standard of objective reasonableness and analyze claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the officer's position could have believed that his or her conduct was lawful, in light of clearly established law and the information that he possessed. *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994). Qualified immunity protects the officer from making a mistake, regardless of whether his error is a mistake of law, mistake of fact or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 555 U.S. 223 (2009). In assessing the reasonableness of an officer's actions under a qualified immunity analysis, the absence of probable cause is not determinative. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Rather, the critical question is whether the officer could have reasonably thought there was probable cause. *Id.*; *See also, Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000).

Here, even if these Defendants were personally involved in arresting Plaintiff, based upon the facts of the Complaint, it was reasonable for them to so. A Magistrate Judge, independent from these Defendants, issued an arrest warrant for Plaintiff's arrest after hearing the facts from another independent party, Defendant Hefstedler. Certainly, any reasonable officer would rely upon a Magistrate Judge's determination that probable cause existed and must be afforded

qualified immunity pursuant to Sixth Circuit precedent in such a situation.  Accordingly, Plaintiff's claims against Defendants Weems and Rosson should be dismissed.

*D. Defendants are Entitled to Qualified Immunity For Plaintiff's Attempted Fifth and Fourteenth Amendment Claims.*

Plaintiff has likewise failed to set forth a claim under the Fifth or Fourteenth Amendment against these Defendants.  It is well settled that to bring a deprivation of property claim under 42 U.S.C. § 1983, a plaintiff has the burden of pleading and proving the inadequacy of state processes. *Vicory v. Walton,* 721 F.2d 1062 (6th Cir. 1983).  Nothing in the Fourteenth Amendment protects against *all* deprivations of life, liberty or property by the state. The Fourteenth Amendment protects only against deprivations *without due process of law. Parratt v. Taylor*, 451 U.S. 527, 537 (1981) (emphasis added); *See also*, *Grim v. Moore*, 745 F. Supp. 1280, 1283-1284 (S.D. Ohio 1988). The Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment. *See Hudson v. Palmer,* 468 U.S. 517, 533 (1984); *Parratt v. Taylor,* 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986).

In *Parratt*, the Supreme Court held that although the petitioner had been deprived of his property under color of law, since the State provided a remedy in tort for persons who believed they had suffered a tortious loss, it could not be said that petitioner was deprived of his property without procedural due process of law. *Id*.  As further explained by the Sixth Circuit in *Vicory*:

> Section 1983 was not meant to supply an exclusive federal remedy for every alleged wrong committed by state officials. Rather, the statute is a remedy for only those wrongs which offend the Constitution's prohibition against property deprivations without procedural due process. Thus we hold that in section 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate. In a procedural due process case under

9

section 1983, the plaintiff must attack the state's corrective procedure as well as the substantive wrong.

*Vicory*, 721 F.2d at 1065-66.

Exhaustion of state law remedies is likewise a prerequisite to maintaining a Taking Clause claim under the Fifth Amendment. *Piper v. City of Celina*, 2005 U.S. Dist. LEXIS 15252, *8-9 (N.D. Ohio 2005) (citing *Williamson County Regional Planning Commission v. Hamilton Bank*, 105 S.Ct. 3108, 3121 (1985)); *See also, Executive Art Studio, Inc. v. Kalamazoo*, 674 F. Supp. 1288, 1292-1293 (W.D. Mich. 1987). If a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until the owner has used the state procedure and been denied compensation. *Williamson*, 105 S. Ct. at 3121. In effect, the state's action does not constitute a constitutional injury unless or until the state fails to provide an adequate post-deprivation remedy for the property loss. *Hudson v. Palmer*, 468 U.S. 517, 82 L. Ed. 2d 393, 104 S. Ct. 3194, 3203 n. 12 (1984); *Silver v. Franklin Township Board of Zoning Appeals*, 966 F.2d 1031, 1034 (6th Cir. 1992); *Piper*, 2005 U.S. Dist. LEXIS 15252 at *8-9.

Based upon these principles, courts in the Sixth Circuit have consistently held that when a Plaintiff fails to allege that he attempted state law remedies or that state law remedies are inadequate, his complaint should be dismissed. *See McMillan v. Fielding*, 136 Fed. Appx. 818, 820 (6th Cir. 2005) (upholding a District Court's dismissal of a plaintiff's complaint when he failed to allege that he attempted any post-deprivation remedies or that they were inadequate); *Smith v. Rutherford County Adult Det. Ctr.*, 2016 U.S. Dist. LEXIS 79218, *4-5 (M.D. Tenn. June 17, 2016) (dismissing lawsuit when the plaintiff failed to plead the inadequacy of state law remedies). Courts have also held that the availability of state law tort actions suffice as adequate post-deprivation remedies and preclude a Section 1983 property deprivation claim. *See Wagner*

10

*v. Higgins*, 754 F.2d 186, 190-93 (6th Cir. 1985). Here, Plaintiff asserts Defendants improperly "seized" his bobcat. Even if true, such an allegation is insufficient to set forth a Fifth or Fourteenth Amendment claim because Plaintiff has failed to show the inadequacy or unavailability of state law remedies. Further, Plaintiff cannot show inadequate state law remedies because under Tennessee law, Plaintiff could bring a tort action to recover his alleged damages.

II. **PLAINTIFF FAILS TO SET FORTH A VIABLE EQUAL PROTECTION VIOLATION.**

Plaintiff's attempt to bring an "Equal Protection" claim also fails. In the complaint, Plaintiff makes conclusory allegations that Defendants' violated the Equal Protection Clause of the Fourteenth Amendment, which prohibits a state from denying to any person within its jurisdiction equal protection of the laws. Importantly, Plaintiff does not allege any membership in any "class or group." (*See* Complaint, D.E. 1, ¶¶ 6 & 25). While a plaintiff may bring a "class of one" Equal Protection claim, even a class of one must show that he or she was treated differently than similarly situated individuals. To prove an equal protection claim under a "class of one" theory, a plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). An equal protection claim simply cannot exist absent an allegation that, compared to others, the plaintiff was treated less favorably. *See e.g., Wills v. City of Memphis, 2016 U.S. Dist. LEXIS 54565, *21* (W.D. Tenn. April, 25, 2016); *Buckles v. Columbus Mun. Airport Auth.*, 2002 U.S. Dist. LEXIS 26264, *43-44 (S.D. Ohio 2002). Here, Plaintiff has not alleged that any other similarly situated individual has been treated

differently, nor has he alleged any facts to support such a conclusion. Accordingly, his Complaint fails to set forth a viable equal protection violation.

III. PLAINTIFF'S CLAIMS AGAINST PERRY COUNTY, TENNESSEE FAIL BECAUSE HE HAS NOT SUFFICIENTLY ALLEGED THAT ANY COUNTY POLICY OR PROCEDURE ACTED AS A "MOVING FORCE" FOR ANY ALLEGED CONSTITUTIONAL DEPRIVATION.

It is well settled that a governmental entity cannot be found liable due to an employee's or agents' actions under a *respondeat superior* analysis. *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658, 694 (1978). A municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Id.* "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Accordingly, to prevail on a § 1983 claim against a governmental entity, a plaintiff must show that a policy or well-settled custom of the entity was the "moving force" behind the alleged deprivation of his or her rights. *Miller v. Sanilac Cnty*, 606 F.3d 240, 254-55 (6th Cir. 2010).

A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557. The pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.* In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. The plausibility standard is

12

not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*.

When a Complaint contains only conclusory allegations without any specific factual assertions to base its allegations, the Complaint fails to state a claim upon which relief can be granted. *See Okolo v. Metro. Gov't*, 892 F. Supp. 2d 931, 943 (M.D. Tenn. 2012) (dismissing claim premised on failure to train, supervise, and adequately train when Plaintiff alleged no supporting facts to base its claim); *Hutchison v. Metro. Gov't*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010) (dismissing claim alleging that a Metropolitan government failed to train its police officers, when Plaintiff alleged no facts related to the government's policies on training or the training the officers received). Further, the Sixth Circuit has repeatedly found that allegations based solely upon "information and belief" do not satisfy the post-Iqbal pleading requirements. *See e.g.*, *In re Darvocet, Darvon, & Propoxyphene Products Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014); *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013); *Brown v. Metro. Gov't of Nashville & Davidson County*, 2012 U.S. App. LEXIS 14553, *11 (6th Cir. Jan. 9, 2012).

Here, Plaintiff attempts to bring claims against Perry County, but alleges nothing more than a conclusory assumption when he asserts based "upon information and belief" that Perry County "has no policy and/or training of employees on issuance of arrest warrants and the seizure of property from citizens." (D.E. 1, ¶ 25). Plaintiff's bare bones conclusory allegation against Perry County fails to satisfy *Iqbal* and *Twombly* standards and as has been repeatedly rejected by the Sixth Circuit. In *Darvocet*, for example, the Sixth Circuit, as it had done before

with similar allegations, dismissed the plaintiff's claims because they were pled only upon "information and belief." *Id*. at 931-32. In so doing, the Court stated:

> As an initial matter, the complaints fall short because they plead the [Defendant's] failure[s]…"upon information and belief." To survive a motion to dismiss, a complaint must plead "facts" that create a "plausible inference" of wrongdoing. *Iqbal*, 556 U.S. at 682, 129 S.Ct. 1937. The mere fact that someone believes something to be true does not create a plausible inference that it is true. *See, e.g., Twombly*, 550 U.S. at 551, 127 S.Ct. 1955 (finding a complaint insufficient even though it said, "Plaintiffs allege upon information and belief that [defendants] have entered into a contract, combination or conspiracy to prevent competitive entry...."); *16630 Southfield Ltd. P'ship v. Flagstar Bank*, 727 F.3d 502, 506 (6th Cir.2013) (finding a series of "upon information and belief" claims insufficient, because the plaintiffs "have merely alleged their 'belief'").

*In re Darvocet*, 756 F.3d at 931. (emphasis added).

Here, Plaintiff offers no facts alleging who Perry County failed to train, when it failed to train, how any lack of policy directly caused Plaintiff's alleged constitutional deprivations, or even how Perry County could have known that the alleged constitutional deprivations were likely to occur. He simply alleges that Perry County lacked adequate policies and training based "upon information and belief." (D.E. 1, ¶ 25). It appears Plaintiff has asserted his "belief" in hopes that the discovery process will lead to a basis to bring claims against Perry County. Such an approach is clearly not appropriate under *Iqbal* and *Twombly*. Accordingly, Plaintiff has failed to allege sufficient facts in order to state a claim against Perry County.

IV. **PLAINTIFF HAS FAILED TO SUFFICIENTLY PLEAD A CONSPIRACY CLAIM OF LIABILITY.**

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). To prevail on this claim, a plaintiff must show "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016) (quoting *Heyne v. Metro.*

14

*Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (citation omitted)). In this circuit, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

Importantly, a § 1983 conspiracy claim must allege both a conspiracy and an actual deprivation of rights. *Anderson v. County of Hamilton*, 780 F. Supp. 2d 635, 652 (S.D. Ohio 2010); *Stone v. Holzberger*, 807 F.Supp. 1325, 1340 (S.D. Ohio 1992) ("mere proof of conspiracy is insufficient to establish a section 1983 claim"). Here, as stated above, because the Plaintiff's underlying claim that he suffered a deprivation of rights fails, his attempt to place liability on Defendants under a conspiracy theory likewise fails.

Furthermore, to the extent Plaintiff seeks to hold Defendants liable for a "conspiracy" based upon their interactions with each other, such an attempt fails pursuant to the intra-corporate conspiracy doctrine. *See Gillespie v. City of Battle Creek*, 100 F. Supp. 3d 623, 631 (W.D. Mich. 2015) (citing *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008)). The intra-corporate conspiracy doctrine provides that where "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Amadasu*, 514 F.3d at 507. Here, Plaintiff cannot assert a conspiracy theory based upon Sheriff Weems' and Chief Deputy's Rosson's alleged interactions with each other. Because Chief Deputy Rosson and Sheriff Weems are both officials for Perry County, the intra-corporate conspiracy doctrine prohibits a conspiracy theory of liability against them.

Lastly, Plaintiff's mere allegation that Sheriff Weems "instructed" Defendant Hufstedler to obtain an arrest warrant does not sufficiently allege "an agreement" to injure Plaintiff by

15

"unlawful action." In fact, such an allegation shows the opposite. Instead of simply going and arresting Plaintiff based upon Defendant Hufstedler's allegations, Sheriff Weems told Defendant Hufstedler to go before the Magistrate Judge to seek an arrest warrant. This allegations suggests no "agreement" to unlawfully harm Plaintiff, but merely an instruction from the Sheriff to Defendant Hufstedler that he needed to proceed through the appropriate, legal channels before the Sheriff's Office would take any action against Plaintiff. Accordingly, Plaintiff has fallen well short of pleading with "specificity" facts to support a conspiracy theory of liability.

CONCLUSION

Based upon the foregoing, all of Plaintiff's attempted claims should be dismissed against these Defendants with prejudice.

Respectfully submitted,

PENTECOST, GLENN, MAULDIN & YORK, PLLC

By: s/ Nathan D. Tilly
James I. Pentecost (#11640)
Nathan D. Tilly (#031318)
Counsel for Nick Weems, Bart Rosson,
and Perry County, Tennessee
106 Stonebridge Blvd
Jackson, TN 38305
(731) 668-5995

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically served via the Court's CM/ECF notification service upon the following counsel of record:

COLLEY, COLLEY & KELLEY
John Colley, III
710 North Main Street
Columbia, TN 38401

Charles H. Barnett
Sara E. Barnett
312 E. Lafayette
PO Box 2004
Jackson, TN 38302-2004

DATE: This the 20th day of March, 2018.

PENTECOST, GLENN, MAULDIN & YORK, PLLC

By: s/ Nathan D. Tilly
Nathan D. Tilly